# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

REALTIME DATA LLC d/b/a IXO,

                Plaintiff,

   v.

FORTINET, INC.,

                Defendant.

C.A. No. 17-1635-GMS

## REALTIME DATA LLC'S ANSWERING BRIEF IN OPPOSITION TO FORTINET, INC.'S MOTION TO TRANSFER VENUE

March 20, 2018

Of Counsel:

Marc A. Fenster
Reza Mirzaie
Paul A. Kroeger
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
(310) 826-7474
mfenster@raklaw.com
rmirzaie@raklaw.com
pkroeger@raklaw.com

BAYARD, P.A.

Stephen B. Brauerman (No. 4952)
Sara E. Bussiere (No. 5725)
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
sbussiere@bayardlaw.com

*Attorneys for Plaintiff*
*Realtime Data LLC d/b/a IXO*

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION .................................................................................................. 1

II.  STATEMENT OF FACTS .................................................................................... 2

III.  ARGUMENT ......................................................................................................... 3

    A.  The Private Interest Factors Militate Against Transfer .......................... 4

        1.  Realtime's choice of forum strongly weighs against transfer ................... 4

        2.  Fortinet's preference is entitled to little if any weight .............................. 6

        3.  Where the claim arose does not support transfer ....................................... 7

        4.  The convenience of the parties weighs against transfer ............................. 9

        5.  The convenience of the witnesses does not favor transfer ....................... 11

        6.  The location of documents is neutral ....................................................... 13

    B.  The Public Interest Factors Militate Against Transfer .......................... 14

        1.  Practical considerations heavily weigh against transfer .......................... 14

        2.  Public policy weighs against transfer ...................................................... 16

        3.  The remaining public interest factors do not support transfer ................. 16

IV.  CONCLUSION .................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cellectis S.A. v. Precision Biosciences, Inc.*,
858 F. Supp. 2d 376 (D. Del. 2012).................................................................. 8

*Cornerstone Therapeutics Inc. v. Exela Pharma Scis., LLC*,
No. CV 13-1275-GMS, 2014 WL 12597625 (D. Del. June 16, 2014)..................... 14

*Cradle IP, LLC v. Texas Instruments, Inc.*,
923 F. Supp. 2d 696 (D. Del. 2013).................................................................. 8

*Genedics, LLC v. Meta Co.*,
No. CV 17-1062-CJB, 2018 WL 417950 (D. Del. Jan. 12, 2018)............... 3, 5, 6, 12

*Genentech, Inc. v. Amgen Inc.*,
No. CV 17-1407-GMS, 2018 WL 503253 (D. Del. Jan. 22, 2018)................. passim

*Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*,
964 F. Supp. 2d 320 (D. Del. 2013)......................................................... 10, 15, 16

*Helicos Biosciences Corp. v. Illumina, Inc.*,
858 F. Supp. 2d 367 (D. Del. 2012).................................................................. 12

*In re Volkswagen of America, Inc.*,
566 F. 3d 1349 (Fed. Cir. 2009) ..................................................................... 15

*Intellectual Ventures I LLC v. Altera Corp.*,
842 F. Supp. 2d 744 (D. Del. 2012)....................................................... 6, 9, 10, 16

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*,
797 F. Supp. 2d 472 (D. Del. 2011)............................................................... passim

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995) .......................................................................... passim

*Micro Design LLC v. Asus Computer Int'l*,
No. CV 14-837-LPS-CJB, 2015 WL 2089770 (D. Del. May 1, 2015) ..................... 15

*Micron Tech., Inc. v. Rambus Inc.*,
645 F.3d 1311 (Fed. Cir. 2011) ..................................................................... 10

*Mitel Networks Corp. v. Facebook, Inc.*,
943 F. Supp. 2d 463 (D. Del. 2013).................................................................. 6

*Schubert v. Cree, Inc.*,
No. CIV.A. 12-922-GMS, 2013 WL 550192 (D. Del. Feb. 14, 2013) ..................... 16

*Shutte v. Armco Steel Corp.*,
431 F.2d 22 (3d Cir. 1970) ......................................................................... 3, 4

*Smart Audio Techs., LLC v. Apple, Inc.*,
910 F. Supp. 2d 718 (D. Del. 2012)................................................................. 16

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  137 S. Ct. 1514 (2017)...................................................................................................... 5

**Statutes**

28 U.S.C. § 1400......................................................................................................................... 4

35 U.S.C. § 271........................................................................................................................... 8

## I.       INTRODUCTION

As the party seeking transfer, Fortinet, Inc. ("Fortinet")—a Delaware corporation—carries a heavy burden of demonstrating that the factors articulated by the Third Circuit in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995) strongly weigh in favor of transfer. Fortinet has not and cannot meet this burden, as all of the relevant factors either weigh against transfer or are neutral at best. On balance, the *Jumara* factors weigh strongly, if not overwhelmingly, *against* transfer.

Contrary to Fortinet's assertions, Realtime Data LLC's ("Realtime") choice of forum in this District is entitled to substantial deference because Realtime has selected this forum for legitimate reasons, namely that Fortinet is incorporated in Delaware. The Court thus has personal jurisdiction over Fortinet and venue is proper under § 1400(b) as recently interpreted by the Supreme Court in *TC Heartland*.

Fortinet, on the other hand, has failed to articulate any legitimate reason to support its preference to litigate in the Northern District of California. Its preference is thus entitled to little if any weight. Nor can Fortinet credibly argue that it would be inconvenient to litigate in this District given its incorporation in Delaware and its failure to identify a single witness or document that cannot be produced in Delaware. In fact, Fortinet admits that it has previously "filed and participated in litigation in this District," and that it has even *opposed the same relief* it now seeks here—transfer from Delaware to the Northern District of California—further undermining the credibility of its allegations that litigating in this District is inconvenient.

Further, there is no dispute that Fortinet's accused products are offered for sale, sold, and used by customers in Delaware. Therefore, contrary to Fortinet's assertions, the claims did not arise solely in California—they also arose in this District. Given the 8 other co-pending actions

involving the same or related patents in this District, the practical considerations also strongly weigh against transfer. Even if this case were transferred to California, this Court will still need to expend substantial resources to learn the technology claimed in the asserted patents, construe the claims, address the parties' discovery disputes, resolve dispositive motions, and ultimately try the cases that proceed to trial. Transferring this case would thus be an inefficient use of judicial resources and would only shift the inconvenience from Fortinet to Realtime. Because Fortinet has failed to meet its burden to demonstrate that the balance of the *Jumara* factors weighs strongly in favor of transfer, its motion should be denied.

## II.  STATEMENT OF FACTS

This case involves 4 patents related to digital data compression. Realtime filed its complaint against Fortinet in this District over 4 months ago on November 10, 2017. (D.I. 1.) There are 8 other cases pending in this District involved the same and/or related patents, all assigned to Judge Sleet (C.A. Nos. 17-800-GMS; 17-925-GMS; 17-972-GMS; 17-1543-GMS; 17-1544-GMS; 17-1676-GMS; 17-1750-GMS; and 17-1769-GMS).

Realtime, the owner of the asserted patents, is a New York corporation with offices in New York and Texas. (Declaration of Richard Tashjian ("Tashjian Decl.") ¶ 3.) Its managers, Gerald Padian, Richard Tashjian, and Steven McErlain, all reside in New York. (*Id.* ¶¶ 2, 4.) The named inventors of the patents-in-suit, James Fallon, Paul Pickel (and also Mr. McErlain) reside in New York, and Carlton Melone II resides in New Jersey. (*Id.* ¶ 4.) Realtime does not have any offices, employees, or operations in California. (*Id.* ¶ 3.)

Fortinet is a Delaware corporation with its principal place of business in Sunnyvale, California. Fortinet does not dispute that the accused products and services are offered for sale, sold, and used by customers in Delaware. Fortinet also admits that it has "filed and participated

in litigation in this District," and that it has even *opposed the same relief* it now seeks here—transfer from Delaware to the Northern District of California. (*See* Mot. at 2.) Indeed, as discussed further below, many of the arguments Fortinet previously made in opposing transfer to the Northern District of California directly contradict the arguments in its current transfer motion. *See Fortinet, Inc. v. FireEye, Inc.*, C.A. No. 12-166-SLR, D.I. 16 (attached as Exhibit A).[1]

## III.   ARGUMENT

While the Court has broad discretion to consider a transfer, the Third Circuit has emphasized that "the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Thus, "a transfer is not to be liberally granted." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

"The party seeking a transfer has the burden 'to establish that a balancing of proper interests weighs in favor of the transfer.'" *Genedics, LLC v. Meta Co.*, No. CV 17-1062-CJB, 2018 WL 417950, at *2 (D. Del. Jan. 12, 2018) (quoting *Shutte*, 431 F.2d at 25) (internal brackets omitted). "That burden is a heavy one: 'unless the balance of convenience of the parties is *strongly in favor* of [the] defendant, the plaintiff's choice of forum should prevail." *Id.* (emphasis in original). "It follows that 'transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer.'" *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 477 (D. Del. 2011).

While there is no definitive formula or list of factors, the Third Circuit has identified a set of private interest and public interest factors for consideration. *Id.* at 478 (citing *Jumara*, 55 F.3d at 879). The private interest factors include (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the

---

[1] Fortinet was represented by the same counsel in *FireEye* as it is in this case.

convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Id.* The public interest factors include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* at 478–79.

As discussed below, Fortinet has not met its heavy burden to demonstrate that the balance of convenience strongly favors transfer to the Northern District of California. Its motion should thus be denied.

### A.      The Private Interest Factors Militate Against Transfer

#### 1.      Realtime's choice of forum strongly weighs against transfer

"It is black letter law that a plaintiff's choice of a proper forum is a ***paramount consideration*** in any determination of a transfer request, and that choice should not be lightly disturbed." *Intellectual Ventures*, 797 F. Supp. 2d at 478 (citing *Shutte*, 431 F.2d at 25) (emphasis added). Indeed, "[t]he deference afforded plaintiff's choice of forum will apply as long as plaintiff has selected the forum for some legitimate reason." *Id.*

Here, Realtime filed suit in this District for legitimate reasons, and its choice of forum is thus entitled to substantial deference. For example, Fortinet is incorporated in Delaware, therefore the Court has personal jurisdiction over Fortinet and venue is proper under 28 U.S.C. § 1400(b). "[T]his Court has repeatedly found that it is rational and legitimate for a plaintiff to

choose to sue a defendant in that defendant's state of incorporation—a district where a plaintiff can have certainty that there will be personal jurisdiction over the defendant." *Genedics*, 2018 WL 417950, at *3; *see also Genentech, Inc. v. Amgen Inc.*, No. CV 17-1407-GMS, 2018 WL 503253, at *3 (D. Del. Jan. 22, 2018) ("Our court has repeatedly found that it is rational and legitimate for a plaintiff to sue in the defendant's state of incorporation."). This rationale is even stronger now the Supreme Court's decision in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S.Ct. 1514 (2017), which restricts patent venue under § 1400(b) to only (1) where defendant resides (e.g., where it is incorporated) or (2) where it committed an act of infringement and has a regular and established place of business. *Genedics*, 2018 WL 417950, at *3. Thus, Realtime's "choice of Delaware as its preferred forum is entitled, ***at a minimum, to 'significant deference*.'**" *Intellectual Ventures*, 797 F. Supp. 2d at 479–80 (emphasis added). This factor weighs strongly against transfer.

Fortinet's assertion that Realtime's choice of forum should be given "little weight" because Delaware is not its "home turf" (Mot. at 4–5) is contrary to this Court's precedent and should be rejected. As recently explained by this Court, "the so-called 'home-turf rule' . . . has no independent significance as to the overall *Jumara* balance of convenience analysis, nor to the analysis regarding this first *Jumara* private interest factor." *Genentech*, 2018 WL 503253, at *3. The rule "was never meant to apply so as to automatically lessen the weight afforded to first *Jumara* private interest factor (if this District is not a plaintiff's 'home turf')." *Id.* Indeed, "even in cases where Delaware is not considered a plaintiff's 'home turf,' a plaintiff's choice of forum is still accorded 'substantial weight,'" where, as here, "that choice relates to the plaintiff's 'legitimate, rational concerns.'" *Id.*

Notably, Fortinet acknowledged in its opposition to the defendant's motion to transfer in *FireEye* that "[t]his Court has already rejected arguments [relating to the so-called 'home turf' rule]." (Ex. A at 9.) And while Fortinet's current motion cites older caselaw in a self-serving attempt to revive the outdated "home turf" rule it previously argued against, those cases at best stand for the proposition that the deference to a non-Delaware plaintiff's choice of forum is only "reduce[d] somewhat." *See Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 469–70 (D. Del. 2013).[2] Because Fortinet has not and cannot show that Realtime's reasons for filing in this District were anything but legitimate, this factor does not favor transfer under any standard.

### 2.    Fortinet's preference is entitled to little if any weight

While the defendant's preference is a consideration in the transfer analysis, "a defendant's preferred venue 'is not sufficient to displace the plaintiff's own choice of venue.'" *Genentech*, 2018 WL 503253, at *3; *see also Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 755 (D. Del. 2012) ("*Altera*") ("Under Third Circuit law, Defendants' preference for an alternative forum is not given the same weight as Plaintiff's preference.").

In analyzing this factor, courts "examine whether the defendant can articulate rational, legitimate reasons to support that preference." *Genedics*, 2018 WL 417950, at *4; *see also Altera*, 842 F. Supp. 2d at 755. Here, Fortinet merely repeats the same arguments it asserts under other private interest factors, namely that its witnesses and documents are located in California,

---

[2] *Mitel Networks* is also factually distinguishable. There, the Court found "compelling" the defendant's allegations—to which plaintiff did not respond—that Mitel Networks, a Canadian company, owned the patents in suit and was thus the real party in interest, and that its subsidiary Mitel Delaware was added as a co-plaintiff merely for jurisdictional purposes due to its incorporation in Delaware. *Id.* at 470. Even under those facts, the Court found that the deference to plaintiff's choice of forum was only "reduce[d] somewhat." *Id.* at 469–70. Here, by contrast, it is undisputed that Realtime is the owner of the asserted patents and Fortinet is incorporated in Delaware. Therefore, Fortinet has not and cannot show that Realtime is not the real party interest or otherwise attempted to manipulate venue in this case.

and then vaguely asserts that litigating this matter in the Northern District of California "will save significant time and expense, and minimize the disruption to Fortinet employees as they continue with their ongoing duties." (Mot. at 6.) This vague, generalized assertion is insufficient, especially given that Fortinet has failed to specifically identify a single witness that will be disrupted, let alone explain why such witnesses would not be able to perform their "ongoing duties" remotely.

Indeed, in *FireEye*, Fortinet criticized the defendant seeking transfer for making nearly identical arguments that "(i) pretend that litigation occurs without the benefits of technology such as telephones and computers, and (ii) this Court has already rejected as outdated." (Ex. A at 11.) Fortinet further argued that "to the limited extent that litigating this case in Delaware requires occasional travel and hotel accommodations: Party representatives, witnesses and counsel for the parties may undertake that travel while remaining as productive as all other travelling participants in this modern economy and without hardship." (*Id.* at 12.) *See Intellectual Ventures*, 797 F. Supp. 2d at 481 (explaining that most of the discovery process takes place "in the offices of the parties' attorneys and in the areas where the parties maintain their documents," and any purported inconvenience to the parties resulting from travel is reduced by the "widespread prevalence of laptop, notebook, and tablet computers; high-speed internet connections; smartphones; and the relative availability of video conferencing technologies").

The same rationale applies here. Fortinet's preference should thus be given little if any weight. *See id.* at 480–81 (defendants' preference "entitled to little weight" where defendants' purported concerns were "more properly addressed in connection with other private *Jumara* factors).

### 3.    Where the claim arose does not support transfer

Fortinet's assertion that "the activities that give rise to Realtime's infringement allegations take place in Northern California" (Mot. at 6) is incorrect. "As a matter of law, a claim for patent infringement arises wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Genentech*, 2018 WL 503253, at \*4; *see also* 35 U.S.C. § 271(a). There is no dispute that the accused products are offered for sale, sold, and used by Fortinet's customers in Delaware. Therefore, under this Court's precedents, this factor is neutral at best. *Genentech*, 2018 WL 503253, at \*4 ("[W]hen the defendant operates on a national or global scale . . . this factor is neutral."). Indeed, other judges in this district have held that this factor weighs *against* transfer where the accused products are sold in Delaware. *See, e.g.*, *Cradle IP, LLC v. Texas Instruments, Inc.*, 923 F. Supp. 2d 696, 699 (D. Del. 2013) ("There is no dispute that [defendant] has sold the accused products in Delaware. This factor weighs against transfer."); *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012) ("If [defendant] offers to sell or sells any of its allegedly infringing products in Delaware (and there is no indication of record to the contrary), the patent claims at issue can be said to have arisen in Delaware. This factor weighs against transfer.").

Notably, in *FireEye*, Fortinet relied on *Cellectis* in arguing that this factor weighed *against* transfer despite the fact that the defendant's accused products were designed and developed in Northern California: "Because FireEye is infringing Fortinet patents through offers of sale and sales inside Delaware, under the federal patent laws Fortinet's claims 'arise' here in Delaware. And even if FireEye has not sold any products inside Delaware—directly or indirectly—Fortinet's claims would still 'arise' here in Delaware by the use of FireEye products by actors within the state." (Ex. A at 11.) In light of these admissions, Fortinet cannot credibly argue here that this factor favors transfer solely based on its vague allegation that "much of the

design, development, commercialization, and marketing of Fortinet's products occurred in Northern California." (Mot. at 6.)

### 4.      The convenience of the parties weighs against transfer

The convenience of the parties is considered in the context of "their relative physical and financial condition." *Jumara*, 55 F.3d at 879; *see also Genentech*, 2018 WL 503253, at *4 ("The court traditionally weighs the convenience of the parties by considering the parties' physical location and relative ability to bear litigation-related travel costs."). Fortinet simply ignores this standard and once again repeats the same allegations regarding the location of its witnesses. (Mot. at 7 (vaguely referencing the "numerous Fortinet employees with knowledge regarding the accused products").) Fortinet fails to present any evidence "to indicate that litigating in Delaware would impose an undue financial burden on Defendants[.]" Therefore, this factor cannot favor transfer. *Altera*, 842 F. Supp. 2d at 755; *see also Intellectual Ventures*, 797 F. Supp. 2d at 477 (defendant "must prove that litigating in Delaware would pose a unique or unusual burden on [its] operations").

Even if the Court were to consider the location of witnesses under this factor, as Fortinet admitted in *FireEye*: "[t]he locations of the parties' headquarters relative to the court house is—in modern patent and trade-secret litigation—immaterial. . . . Depositions may occur where witnesses are located, regardless of the locations of the parties or the federal court. . . . And to the limited extent that litigating this case in Delaware requires occasional travel and hotel accommodations: Party representatives, witnesses and counsel for the parties may undertake that

travel while remaining as productive as all other travelling participants in this modern economy and without hardship." (Ex. A at 12.) [3]

Moreover, "[Fortinet's] allegations of inconvenience are contradicted by the fact that it voluntarily chose to incorporate in Delaware." *Genentech*, 2018 WL 503253, at \*4. Fortinet has thus "willingly submitted to suit there, which weighs in favor of keeping the litigation in Delaware." *Altera*, 842 F. Supp. 2d at 756 (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1332 (Fed. Cir. 2011)). There is a "long line of decisions from this District, which make plain that a Delaware corporation must expect an uphill climb in proving that it is, in any meaningful sense, 'inconvenient' to defend its actions in the forum in which the corporation has freely chosen to create itself." *Id.* Because Fortinet has failed to make any "showing of a unique or unexpected burden," it "should not be successful in arguing that litigation in its state of incorporation is inconvenient." *Genentech*, 2018 WL 503253, at \*4.

On the other hand, Realtime, a New York company with offices in New York and Texas, has no ties to California, and has not willingly submitted to suit there. It would thus be significantly more convenient for Realtime to litigate this case in this District than in the Northern District of California.

Fortinet's reliance on the fact that Realtime has California counsel is meritless and unsupported. (*See* Ex. A at 12 (admitting that "[t]he locations of the offices for lead counsel for the parties is—in any modern civil litigation—immaterial").) Fortinet also conveniently ignores that Realtime has retained Delaware counsel for this litigation.

---

[3] *See also Intellectual Ventures*, 797 F. Supp. 2d at 481; *Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 328–29 (D. Del. 2013) ("[A]s a practical matter, regardless of the trial venue, most of the discovery will take place in California or other locations mutually agreed to by the parties.").

Fortinet's reliance on Realtime's witness declarations from other cases stating that litigating the *Eastern District of Texas* would be more convenient than in *Southern District of New York* is nonsensical. Those declarations do not somehow evidence that litigating *this case* in the *Northern District of California* would be more convenient than litigating in *Delaware*. And in any event, witness convenience is considered under a separate *Jumara* factor and irrelevant under this factor, which focuses on the relative financial burdens on the parties.

Fortinet's assertion that "Realtime is certainly able to litigate cases in the Northern District of California" simply because it has other cases pending there (Mot. at 8) likewise misses the point. Again, this factor focuses on the relative financial burdens of the parties— which Fortinet completely fails to address—not whether the parties are merely "able" to litigate in a particular district. And even if the Court were to apply this erroneous standard, certainly Fortinet is "able" to litigate this case in Delaware, as evidenced by its admission that it has "filed and participated in litigation in this District," and that it has even opposed transfer from Delaware to the Northern District of California. (Mot. at 2.)

In sum, all of Fortinet's arguments under this factor fail to address the relevant standard regarding the parties' "relative physical and financial condition." *Jumara*, 55 F.3d at 879. Given its incorporation in Delaware and its demonstrated preference for litigating in this District over the Northern District of California, this factor heavily weighs against transfer.

### 5.    The convenience of the witnesses does not favor transfer

The "convenience of the witnesses" factor carries weight "only to the extent that 'a witness ***actually*** will refuse to testify absent a subpoena.'" *Genentech*, 2018 WL 503253, at *4 (emphasis added); *see also Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 373 (D. Del. 2012) ("[I]t is not whether witnesses are inconvenienced by litigation but, rather,

whether witnesses 'actually may be unavailable for trial in one of the fora' that is a determinative factor in the transfer analysis.").

"In addition, witnesses who are employed by a party carry **no weight**, because each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Genentech*, 2018 WL 503253, at *4 (emphasis added, quotation marks omitted). Further, the weight of this factor is not determined solely on which party can present a longer list of possible witnesses in its preferred district. *Genedics*, 2018 WL 417950, at *6. "The party seeking the transfer must **clearly specify** the key witnesses to be called and must make a general statement of what their testimony will cover." *Id.* (emphasis added). "**If a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be the application for transfer will be denied.**" *Id.* (emphasis added).

In sum, the party seeking transfer must "provide specificity as to: (1) the particular witness to whom it is referring; (2) what that person's testimony might have to do with a trial in this case; and (3) what reason there is to think that the person will 'actually' be unavailable for trial (as opposed to the proffer of a guess or speculation on that front)." *Id.* at *7. Fortinet's motion fails on all three counts. Fortinet has not specifically identified a single witness let alone what their testimony will cover. Nor has Fortinet provided any reason for why its witnesses will *actually* be unavailable for trial. Instead, Fortinet offers only the generalized allegation that "a large number of witnesses reside in Northern California." (Mot. at 8.) This falls far short of its burden on a motion to transfer.[4]

---

[4] Elsewhere in its motion, Fortinet offers equally vague assertions that the "majority" of its employees work in or near Sunnyvale, but fails to state where other relevant employees are located.  (*See, e.g.*, Mot. at 1, 2.) The declaration of William Cooper does not shed any additional light on the identities or knowledge of Fortinet's witnesses. (D.I. 17 ¶ 6.) The Cooper declaration does state, however, that "the principal location for employees devoted to engineering and

Moreover, Fortinet's motion relies solely on the location of its employee witnesses, which carry no weight under this factor. (Mot. at 3 ("Fortinet is not presently aware of any unaffiliated third parties with information relevant to this case.").) *Genentech*, 2018 WL 503253, at *4; *see also Jumara*, 55 F.3d at 879. Fortinet's vague assertion regarding the purported "disruption to [its] business activities" (Mot. at 8) is irrelevant and should be rejected for the reasons discussed above.  On balance, this factor is neutral at best and does not support transfer.[5]

### 6.        The location of documents is neutral

As with the convenience of witnesses, the location of the parties' books and records is relevant "only to the degree that the books and records cannot be produced in Delaware." *Genentech*, 2018 WL 503253, at *5; *see also Jumara*, 55 F.3d at 879. Here, Fortinet vaguely asserts that "a large volume" of its documents and source code are located in Northern California. (Mot. at 9.) But Fortinet "has not articulated any reason why those [documents and source code] cannot be produced in Delaware." *Genentech*, 2018 WL 503253, at *5. Indeed, this Court "has repeatedly recognized that 'virtually all businesses maintain their books and records in electronic format readily available for review and use at any location,'" thereby eliminating any purported inconvenience under this factor. *Id.*

Fortinet likewise admitted in *FireEye* that "[d]ocument productions may be accomplished by e-mail, by sending discs and/or by using secure 'file-sharing' web sites, regardless of where the case is pending or even where the parties or counsel are located," and that arguments regarding the location of source code are "frivolous" given that "[t]he parties may produce and

---

research and development is Vancouver, Canada"—who be required to travel a significant distance even if this case was transferred to the Northern District of California.

[5] Realtime's witnesses, including the inventors of the asserted patents, all reside in or near New York, which is much closer to Delaware than California. It would thus be far more convenient for Realtime's witnesses to litigate in this District rather than the Northern District of California. Contrary to Fortinet's mischaracterizations, Realtime's prior witness declarations do not state otherwise.

inspect source code at an independent escrow facility, at counsel's office, or any other secure facility they negotiate. Where that happens—Delaware, California or any other location—has nothing to do with whether the case is pending in one federal court versus another." (Ex. A at 12, 17.) "Accordingly, this factor weighs against transfer." *Genentech*, 2018 WL 503253, at \*5; *see also Cornerstone Therapeutics Inc. v. Exela Pharma Scis., LLC*, No. CV 13-1275-GMS, 2014 WL 12597625, at \*2 (D. Del. June 16, 2014) (finding this factor weighed against transfer where the defendant "has not explained why these documents could not be transmitted electronically or otherwise made available in Delaware").

### B. The Public Interest Factors Militate Against Transfer

#### 1. Practical considerations heavily weigh against transfer

Practical considerations are those that "make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. Fortinet's arguments for this factor are merely rehashing of its previous arguments regarding the private interest factors, namely that "most of the relevant evidence and the majority of potential witnesses" are purportedly located in the Northern District of California. (Mot. at 10.) This is improper.[6] And even if relevant under this factor, those arguments fail for the reasons discussed above, including because Fortinet's documents can easily be produced in this District, and Fortinet has failed to specifically identify a single witness that will be unavailable for trial absent a subpoena and explain the testimony that such witnesses will cover. In addition, given that Fortinet is incorporated in Delaware, it cannot legitimately argue that it will be inconvenienced by litigating here.

---

[6] Indeed, in *FireEye*, Fortinet criticized the defendant for doing the same thing Fortinet is guilty of here—"repeat[ing] facts that are specific to the private factors—namely the locations of the parties and witnesses for this case." (Ex. A at 17.) Fortinet further argued that "[defendant] may not get a different result by making the same unavailing arguments in a different section of its briefing." *Id.* Realtime agrees.

On the other hand, it would be more convenient and less expensive for Realtime to litigate in this District rather than California. Realtime is a New York company with offices in New York and Texas—none in California—and all of its relevant witnesses are in or near New York, which is much closer to this District than the Northern District of California.[7] (*See* Tashjian Decl. ¶¶ 2–4, 6.)

In addition, there are 8 other cases concerning the same and/or related patents pending in this District, all assigned to Judge Sleet. As recognized by this Court, "efficiencies can be gained when all related cases are litigated together." *Genentech*, 2018 WL 503253, at *5 (citing *Micro Design LLC v. Asus Computer Int'l*, No. CV 14-837-LPS-CJB, 2015 WL 2089770, at *10 (D. Del. May 1, 2015)). The Federal Circuit has likewise held that "the existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of America, Inc.*, 566 F. 3d 1349, 1351 (Fed. Cir. 2009).

In light of the foregoing, this factor heavily weighs against transfer. *See, e.g.*, *Graphics Properties*, 964 F. Supp. 2d at 330 ("Plaintiff GPH has at least 11 other cases pending in Delaware, each of which involves one or more of the asserted patents. As a result, even if the present case were transferred to California, the Court would still need to learn the technology claimed in the asserted patents, construe the claims of those patents, resolve summary judgment motions (if any), address the parties' discovery disputes, and ultimately try the cases that proceed

---

[7] Inventor James Fallon is in Armonk, New York. Inventor Paul Pickel is in Long Beach, New York. Inventor Carlton J. Melone II is in Ridgewood, New Jersey. Stephen McErlain, inventor and manager of Realtime, is in Astoria, New York. Gerald Padian and Richard Tashjian, also managers of Realtime, reside in Katonah, New York, and Manhasset, New York, respectively. Each of the inventor witnesses are knowledgeable about the conception and reduction to practice of the inventions claimed in the patents-in-suit. Realtime's managers are knowledgeable about Realtime's operations, Realtime's claims and defenses in this and other related cases, Realtime's licensing and other attempts to commercialize the patents-in-suit, Realtime's patent licensing policies, and Realtime's financial information relevant to damages issues.

to trial. This factor weighs heavily against transfer."); *Schubert v. Cree, Inc.*, No. CV 12-922-GMS, 2013 WL 550192, at *5 (D. Del. Feb. 14, 2013) ("[T]he fact that related cases are currently pending before the court suggests that denying this motion would best serve the interests of judicial economy."); *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 733 (D. Del. 2012) ("[T]he commonalities that do exist between the four lawsuits may allow the court to develop some familiarity with the patents and technology involved, thereby conserving judicial time and resources. This is an important practical consideration, and the court therefore finds that this factor weighs against transfer.").

### 2.     Public policy weighs against transfer

"[T]he public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for resolution of business disputes." *Altera*, 842 F. Supp. 2d at 760; *see also Graphics Properties*, 964 F. Supp. 2d at 331 (same). Because Fortinet is a Delaware corporation, this factor weighs against transfer.

### 3.     The remaining public interest factors do not support transfer

Fortinet concedes that the remaining public interest factors concerning enforceability of the judgment, court congestion, local interest in deciding local controversies at home, and the trial judge's familiarity of the with the applicable law, are neutral and do not favor transfer.

## IV.    CONCLUSION

All of the private interest and public interest factors either weigh against transfer or are neutral at best. None favor transfer. Therefore, Fortinet has not met its heavy burden to show that the factors *strongly* favor transfer. *See Intellectual Ventures*, 797 F. Supp. 2d at 477 ("[T]ransfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer.").

Accordingly, the Court should deny Fortinet's motion to transfer this case to the Northern District of California.


March 20, 2018                             BAYARD, P.A.

Of Counsel:                                /s/ Stephen B. Brauerman
                                           Stephen B. Brauerman (No. 4952)
Marc A. Fenster                            Sara E. Bussiere (No. 5725)
Reza Mirzaie                               600 N. King Street, Suite 400
Paul A. Kroeger                            Wilmington, DE 19801
RUSS AUGUST & KABAT                        (302) 655-5000
12424 Wilshire Boulevard, 12th Floor       sbrauerman@bayardlaw.com
Los Angeles, CA 90025                      sbussiere@bayardlaw.com
(310) 826-7474
mfenster@raklaw.com                        *Attorneys for Plaintiff*
rmirzaie@raklaw.com                        *Realtime Data LLC d/b/a IXO*
pkroeger@raklaw.com