IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

REALTIME DATA LLC, d/b/a IXO, :
:
          Plaintiff, :
:
    v. :   Civil Action No. 17-1635-CFC
:
FORTINET, INC. :
:
:
          Defendant. :

Stephen B. Brauerman, Sara E. Bussiere, BAYARD, P.A., Wilmington, Delaware; Mark A. Fenster, Paul A. Kroeger, Reza Mirzaie, RUSS, AUGUST & KABAT, Los Angeles, California

   *Counsel for Plaintiff*

Jack B. Blumenfeld, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; John (Jay) Neukom, William J. Casey, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, Palo Alto, California

   *Counsel for Defendant*

# MEMORANDUM OPINION

_/s/ Colm F. Connolly_
CONNOLLY, UNITED STATES DISTRICT JUDGE

OCTOBER 31, 2018

Realtime Data LLC has sued Fortinet, Inc., a Delaware corporation, for patent infringement. Fortinet has moved pursuant to 28 U.S.C. § 1404(a) to transfer this case to the Northern District of California—where Fortinet is headquartered, has its principal place of business, and can produce its witnesses and documents more easily. Realtime has pending suits against other defendants in the Northern District alleging violations of some of the same patents that are at issue here, but it has many more such suits pending in this District before me. For the reasons discussed below, I will deny Fortinet's motion to transfer (D.I. 14).

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). It is undisputed that this action could have been brought in the Northern District of California. Thus, the only issue before me is whether I should exercise my discretion under § 1404(a) to transfer the case to California.

Fortinet has the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25

(3d Cir. 1970). This burden is heavy. "[U]nless the balance of convenience of the parties is *strongly* in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Id.* (emphasis in original) (internal quotation marks and citation omitted).

The proper interests to be weighed in deciding whether to transfer a case under § 1404(a) are not limited to the three factors recited in the statute (i.e., the convenience of the parties, the convenience of the witnesses, and the interests of justice). *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Although there is "no definitive formula or list of the factors to consider" in a transfer analysis, the court in *Jumara* identified 12 interests "protected by the language of § 1404(a)." *Id.* Six of those interests are private:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (citations omitted). The other six interests are public in nature:

> [7] the enforceability of the judgment; [8] practical considerations that could make the trial easy, expeditious, or inexpensive; [9] the relative administrative difficulty in the two fora resulting from court congestion; [10] the local interest in deciding local controversies at home; [11] the public policies of the fora; and [12] the

2

> familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (citations omitted). As the parties have not identified relevant factors beyond these 12 interests, I will balance the *Jumara* factors in deciding whether to exercise the discretion afforded me by § 1404(a).

## I. PLAINTIFF'S FORUM PREFERENCE

This factor clearly weighs against transfer. The parties agree on that much. They disagree, however, about the amount of weight I should give this factor in conducting the balancing of interests called for by *Jumara*. Fortinet argues that Realtime's forum choice "should receive little weight." D.I. 15 at 5. Realtime contends that I should give its forum choice "paramount consideration." D.I. 20 at 4.[1]

In *Shutte*, the Third Circuit held that "[i]t is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request" brought pursuant to § 1404(a), and that this choice "should not be lightly disturbed." 431 F.2d at 25 (internal quotation marks and citation omitted). The parties have not cited and I am not aware of any Third Circuit or United States Supreme Court case that overruled *Shutte*. *Jumara* cited *Shutte* favorably and

---

[1] Elsewhere, Realtime argues that its forum choice "is entitled to substantial deference," D.I. 20 at 1, and similarly that "its preferred forum is entitled, *at a minimum, to significant deference*," D.I. 20 at 5 (emphasis in original) (internal quotation marks and citation omitted).

3

reiterated *Shutte*'s admonition that "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879 (internal quotation marks and citation omitted). Thus, I agree with Realtime that binding Third Circuit law compels me to treat its forum choice as "a paramount consideration" in the § 1404(a) balancing analysis.

Fortinet, however, asks me to ignore *Shutte*'s unambiguous language (and *Jumara*'s endorsement of *Shutte*) and instead give Realtime's forum choice "little weight" because (1) Realtime has not "offer[ed] evidence explaining its rationale" for choosing the District of Delaware as a forum, D.I. 23 at 2–3; *see also id.* at 2 ("Although the cases cited by Realtime state that 'the court should not consider simply the fact of that choice, but the reasons behind that choice,' Realtime fails to provide the court with *any* rationale for its choice of forum." (emphasis in original)); (2) the District of Delaware is not Realtime's "home turf," D.I. 15 at 4–5; D.I. 23 at 2; and (3) the facts underlying the parties' dispute did not occur in Delaware, D.I. 15 at 4–5; D.I. 23 at 2.

### A.    Realtime's Rationale for Choosing this District

Fortinet cites a line of cases in which district court and magistrate judges in the Third Circuit looked to "the reasons behind" a plaintiff's forum choice and gave reduced or even no weight to a plaintiff's forum selection if the plaintiff did not have "legitimate, rational concerns" in choosing the forum. *See* D.I. 23 at 2–3

(citations omitted). I find, however, that these cases are not consistent with *Shutte, Jumara,* or Supreme Court precedent.

Neither *Shutte* nor *Jumara* hold or even intimate that a plaintiff's rationale or motive in selecting its forum choice is relevant for § 1404(a) purposes. Putting aside the practical difficulty of accurately discerning a plaintiff's rationale, to my knowledge the Third Circuit has not held, and I do not believe, that a plaintiff's rationale in selecting a forum is relevant to the transfer inquiry.

The availability of multiple lawful venues is a fundamental feature of our federal system that invites competent counsel to advise their clients to select the litigation forum that best aligns with the clients' interests. When choosing among available venues, plaintiffs understandably—and legitimately—weigh a host of considerations, including, for example, the laws that would apply in the competing venues, the relative speed with which the venues move cases, the manner in which the venues handle discovery disputes, the scope of discovery allowed by the venues, and the plaintiffs' assessments of the venues' judges and the likelihood those judges would rule in the plaintiffs' favor. Every sophisticated plaintiff that can bring a lawsuit in multiple venues engages in forum shopping when it chooses a particular venue. The Court's concern is whether the venue choice is permitted by statute, not what motivated the plaintiff to select the venue.

5

The principle that a plaintiff can lawfully engage in forum shopping is sufficiently fundamental to our federal system that the Supreme Court has called the plaintiff's choice of forum a "venue privilege." *See Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Texas,* 571 U.S. 49, 63 (2013) ("Because plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), we have termed their selection the 'plaintiff's venue privilege.'"). And twice in the context of a § 1404(a) transfer motion, the Court has recognized the legitimacy of forum shopping by a plaintiff.

In *Van Dusen v. Barrack,* 376 U.S. 612 (1964), the Court held that when a diversity suit is transferred under § 1404(a) at the request of the defendant, the transferee court is required to follow the choice-of-state-law rules that would have existed in the transferor court. *Id.* at 639. The Court reasoned that § 1404(a) should not deprive the plaintiff of state-law advantages it would have enjoyed in the transferor court. *Id.* at 633–34. The Court explained that "[section] 1404(a) was not designed to narrow the plaintiff's venue privilege . . . but rather the provision was simply to counteract the inconveniences that flowed from the venue statutes by permitting transfer to a convenient federal court." *Id.* at 635.

In *Ferens v. John Deere Co.,* 494 U.S. 516 (1990), the Court extended *Van Dusen*'s holding to § 1404(a) transfers made at a plaintiff's request. *Id.* at 519.

Ferens, who had been injured in a Pennsylvania farm accident, failed to file a tort action in Pennsylvania within the applicable two-year statute of limitations. *Id.* In the third year after the accident, Ferens and his wife filed a diversity contract case against *John Deere* in the Western District of Pennsylvania and then filed a second diversity tort action against *John Deere* in the Southern District of Mississippi, where, under Mississippi choice-of law rules, a six-year statute of limitations applied. *Id.* at 519–20. At this point, to use the Supreme Court's words, "the Ferenses took their forum shopping a step further," as they requested and obtained a § 1404(a) transfer of the Mississippi action to the Western District of Pennsylvania. *Id.* at 520. The Pennsylvania district court consolidated the actions but held that because the Ferenses had moved for the transfer as plaintiffs, the *Van Dusen* rule did not apply and therefore Pennsylvania's two-year statute of limitations barred the Ferenses' tort claims. *Id.* at 520–21. The Third Circuit affirmed the district court's holding. *Id.* at 521.

In reversing the Third Circuit's decision, the Supreme Court explained in relevant part:

> The text of § 1404(a) may not say anything about choice of law, but we think it not the purpose of the section to protect a party's ability to use inconvenience as a shield to discourage or hinder litigation otherwise proper. The section exists to eliminate inconvenience without altering permissible choices under the venue statutes.
> * * * *

> [E]ven without § 1404(a), a plaintiff already has the option of shopping for a forum with the most favorable law. The Ferenses, for example, had an opportunity for forum shopping in the state courts because both the Mississippi and Pennsylvania courts had jurisdiction and because they each would have applied a different statute of limitations. Diversity jurisdiction did not limit these forum shopping opportunities; instead, under *Erie* [*Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)], the federal courts had to replicate them. Applying the transferor law would not give a plaintiff an opportunity to use a transfer to obtain a law that he could not obtain through his initial forum selection. If it does make selection of the most favorable law more convenient, it does no more than recognize a forum shopping choice that already exists. This fact does not require us to apply the transferee law. Section 1404(a), to reiterate, exists to make venue convenient and should not allow the defendant to use inconvenience to discourage plaintiffs from exercising the opportunities [for forum shopping] that they already have.
>
> * * * *
>
> The desire to take a punitive view of the plaintiff's actions should not obscure the systemic costs of litigating in an inconvenient place.
>
> * * * *
>
> Our rule may seem too generous because it allows the Ferenses to have both their choice of law and their choice of forum, or even to reward the Ferenses for conduct that seems manipulative. We nonetheless see no alternative rule that would produce a more acceptable result.

*Id.* at 525–31. This quoted language makes clear to me that a plaintiff's rationale behind its forum selection, even if the rationale is "manipulative," is irrelevant for § 1404(a) purposes.

8

In this case, it is undisputed that Delaware is a proper forum for this action. *See* 28 U.S.C. 1400(b) ("Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."). Since Fortinet is a Delaware company, the Supreme Court's decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017) would foreclose any argument that venue does not lie in this District. *See id.* at 1521 (holding that under § 1400(b) a domestic corporation "resides" only in its state of incorporation). Accordingly, I will not look to the reasons behind Realtime's selection of Delaware as a forum; nor will I give less weight to Realtime's forum choice on the grounds that it had not articulated its rationale to Fortinet's satisfaction.[2]

### B. Lack of Delaware Connections

Fortinet also cites in support of its position certain opinions issued by district court and magistrate judges in the Third Circuit that appear to assign less weight to a plaintiff's forum choice when the forum is not the plaintiff's "home turf"—that is, if the plaintiff has limited or no facilities, operations, or employees in the

---

[2] In fact, Realtime disclosed at least part of its rationale for filing suit in the District of Delaware. *See* D.I. 20 at 4–5 (noting that one reason that Realtime sued Fortinet in Delaware is because "Fortinet is incorporated in Delaware, [and] therefore the Court has personal jurisdiction over Fortinet and venue is proper under 28 U.S.C. § 1400(b)").

9

forum—and/or when the facts giving rising to the lawsuit did not occur in the plaintiff's selected forum. *See* D.I. 15 at 4–5 (citations omitted). I am not, however, persuaded that these opinions are consistent with *Shutte*. I will instead follow Judge Stapleton's lead in *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761 (D. Del. 1975).

Like Judge Stapleton, I read *Shutte*'s "statement of 'black letter law' as an across-the-board rule favoring plaintiff's choice of forum." *Id.* at 763. As Judge Stapleton explained in rejecting the "home-turf" rule argued by the defendant in *Burroughs*:

> The court's decision in *Shutte* to give weight to the plaintiff's choice of forum is not an application of any of the criteria recited in [§ 1404(a)]. Assuming jurisdiction and proper venue, weight is given to plaintiff's choice because it is plaintiff's choice and a strong showing under the statutory criteria in favor of another forum is then required as a prerequisite to transfer. One can perhaps debate whether plaintiff's choice should be given any weight at all in a transfer context, but assuming it is to be given some weight in cases where the plaintiff lives in the forum state, it is difficult to see why it should not also be given weight when the plaintiff lives in [another] state. . . . [The] plaintiff's contact or lack thereof with the forum district will ordinarily be reflected in the 'balance' of conveniences, but that contact, per se, is unrelated to anything in *Shutte*, or Section 1404(a).

*Id.* at 763 n.4.

I, too, find it difficult to understand why the plaintiff's forum choice in and of itself merits less weight when the plaintiff has no ties to the selected forum or

10

when the facts underlying the controversy occurred elsewhere. I do not mean to suggest that these two latter considerations will not impact the overall transfer analysis. On the contrary, because these considerations are subsumed and given weight under *Jumara* factors 3 (whether the claim arose elsewhere), 4 (convenience of the parties), 5 (convenience of the witnesses), 6 (location of books and records), 8 (practical considerations that could make the trial easy, expeditious, or inexpensive), and 10 (the local interest in deciding local controversies at home), a defendant seeking to transfer a case when neither the plaintiff nor the facts giving rise to the case have any connection to the selected forum will generally have less difficulty in meeting its burden to establish that the *Jumara* factors weigh strongly in favor of transfer.

I do not believe that the Federal Circuit's opinion in *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011) compels a different conclusion. In *Link_A_Media*, the Federal Circuit vacated this court's denial of a § 1404(a) motion to transfer a patent case filed here by a non–United States company. *Id.* at 1222. The Federal Circuit held that this court committed a "fundamental error [in] making [the plaintiff's] choice of forum and the fact of [the defendant's] incorporation in Delaware effectively dispositive of the transfer inquiry." *Id.* at 1223. Although the Federal Circuit did not cite *Shutte* in *Link_A_Media*, it applied

Third Circuit law and noted that "[t]o be sure, the Third Circuit places significance on a plaintiff's choice of forum." *Id.*

In dicta in *Link_A_Media*, the court noted that "[w]hen a plaintiff brings its charges in a venue that is not its home forum, . . . that choice of forum is entitled to less deference." *Id.* I understand this statement, however, to apply only when the plaintiff, like the plaintiff in *Link_A_Media*, is a non–United States company. I draw this inference because the court cited in support of its statement two Supreme Court decisions, *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007) and *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), neither of which involved transfer motions brought pursuant to § 1404(a). Rather, in both *Sinochem* and *Piper Aircraft*, the Supreme Court reviewed dismissals of actions filed by non–United States plaintiffs based on the common-law *forum non conveniens* doctrine. As the Court explained in *Piper Aircraft*, "1404(a) transfers are different than dismissals on the ground of *forum non conveniens*." 454 U.S. at 253. Unlike § 1404(a), "[t]he common-law doctrine of *forum non conveniens* has continuing application [in federal courts] only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best." *Sinochem*, 549 U.S. at 430 (second alteration in original) (internal quotation marks and citation omitted). The doctrine "is designed in part to help courts avoid conducting complex exercises in comparative law" and

12

thus enables a district court to dismiss the case where it would be otherwise "required to untangle problems in conflict of laws, and in law foreign to itself." *Piper Aircraft,* 454 U.S. at 251 (internal quotation marks and citation omitted). Because these concerns about foreign law and comparative law issues are not implicated by a § 1404(a) transfer motion in a patent case filed by a domestic plaintiff, I understand *Link_A_Media* to say that a plaintiff's forum choice in a patent case merits "less deference" for § 1404(a) purposes only if the plaintiff does not reside in the United States.

In this case, Realtime is a domestic company, and therefore I will follow *Shutte* and give Realtime's forum choice paramount consideration in balancing the *Jumara* factors.

## II. DEFENDANT'S FORUM PREFERENCE

This factor favors transfer.

## III. WHETHER THE CLAIM AROSE ELSEWHERE

This factor bears only slightly on the transfer analysis. On one hand, it appears that Fortinet's research and development efforts associated with the products accused of infringing Realtime's patents occurred in the Northern District of California—at Fortinet's headquarters in Sunnyvale and at another Fortinet office in Union City. The connection between those efforts and the Northern District favors transfer. *See In re Hoffmann–La Roche, Inc.,* 587 F.3d 1333, 1338

(Fed. Cir. 2009). On the other hand, some of the research and development activities relevant to this action occurred outside of the Northern District—in Vancouver, Canada. Moreover, patent claims arise wherever the allegedly-infringing products are sold, *Treehouse Avatar LLC v. Valve Corp.*, 170 F. Supp. 3d 706, 710 (D. Del. 2016) (first citing 35 U.S.C. § 271(a); then citing *Red Wing Shoe Co., Inc. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998)), and Fortinet acknowledged at oral argument that the accused products in this case are marketed and sold in Delaware, *see* Tr. of Oct. 16, 2018 Hr'g at 12. Overall, this factor weighs in favor of transfer, but only slightly.

### IV. THE CONVENIENCE OF THE PARTIES AS INDICATED BY THEIR RELATIVE PHYSICAL AND FINANCIAL CONDITION

This factor favors transfer, but only slightly. "[A]bsent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient." *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001). Fortinet is incorporated in Delaware. To establish "inconvien[ce]," therefore, Fortinet must show that it would face "a unique or unexpected burden" in having to litigate this case in this District.

Fortinet has shown a probability that it would at least be marginally more convenient to produce its witnesses and documents in the Northern District of California than in Delaware, because most of Fortinet's employees and documents

14

are already located in the Northern District. As the Northern District of California and this District appear equally convenient for Realtime, which is litigating suits in both fora, and Delaware is not a particularly inconvenient forum for Fortinet, which is incorporated in Delaware, the convenience of the parties weighs slightly in favor of transfer.

### V. THE CONVENIENCE OF THE WITNESSES

This factor carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012) (noting that this factor applies only insofar as "a witness actually will refuse to testify absent a subpoena"). In addition, "witnesses who are employed by a party carry no weight," because "each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). Here, Fortinet has not identified with particularity any potential witness who would not be available for trial in Delaware. Because there is no record evidence that demonstrates that necessary witnesses will refuse to appear in Delaware for trial without a subpoena, this factor is neutral.

### VI. THE LOCATION OF BOOKS AND RECORDS

*Jumara* instructs me to give weight to the location of books and records only "to the extent that the files [and other documentary evidence] could not be

15

produced in the alternative forum." 55 F.3d at 879. In this case, Fortinet has not identified any evidence that could not be produced in Delaware. Because no records have been identified as only being available in either the Northern District of California or Delaware, this factor is neutral. *See Signal Tech, LLC v. Analog Devices, Inc.*, 2012 WL 1134723, at *3 (D. Del. Apr. 3, 2012).

### VII. ENFORCEABILITY OF THE JUDGMENT

The parties agree that this factor is neutral, as judgments from this District and the Northern District of California would be equally enforceable.

### VIII. PRACTICAL CONSIDERATIONS

*Jumara* instructs me to give weight to "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. This factor weighs strongly against transfer.

There are 19 other cases filed by Realtime currently pending in this District and assigned to me. All 19 cases involve at least two of the same four patents that Fortinet is alleged to have infringed in this case. Sixteen of my cases involve three of the same four patents-in-suits, and three of those 16 cases involve all four of the same patents-in-suits. In this respect, judicial economy counsels strongly against transfer.

Fortinet points out that Realtime has also sued various entities in the Northern District of California for allegedly infringing some of the same patents.

16

Indeed, Realtime is alleging patent infringement in four different actions in the Northern District. *See generally Realtime Data LLC v. Veritas Techs. LLC*, No. 3:18-cv-06029-SI (N.D. Cal. filed Oct. 2, 2018); *Realtime Data LLC v. Nexenta Sys., Inc.*, No. 3:18-cv-00574-EMC (N.D. Cal. filed Jan. 26, 2018); *Realtime Data LLC v. Silver Peak Sys., Inc.*, No. 4:17-cv-02373-PJH (N.D. Cal. filed Apr. 26, 2017); *Realtime Data LLC v. Fujitsu Am., Inc.*, No. 3:17-cv-02109-SK (N.D. Cal. filed Apr. 14, 2017). Three of these California cases involve two of the four patents-in-suit in this action. The fourth case involves all four patents-in-suit.

The four California cases, however, are assigned to four different judges. Moreover, two of the California cases have been stayed pending various inter partes reviews by the United States Patent and Trademark Office of the patents-in-suits. *See Realtime Data LLC v. Silver Peak Sys., Inc.*, No. 4:17-cv-02373-PJH (N.D. Cal. filed Apr. 26, 2017) (ECF No. 101); *Realtime Data LLC v. Fujitsu Am., Inc.*, No. 3:17-cv-02109-SK (N.D. Cal. filed Apr. 14, 2017) (ECF No. 63). Finally, the only California case wherein all four patents-in-suit overlap with this case has been referred to a magistrate judge for settlement. *See Realtime Data LLC v. Nexenta Sys., Inc.*, No. 3:18-cv-00574-EMC (N.D. Cal. filed Jan. 26, 2018) (ECF No. 44).

In light of the 19 related cases on my docket and the substantial overlap of the patents-in-suits in those cases with the patents-in-suit in this case, I find that the

practical considerations that could make the trial easy, expeditious, or inexpensive weigh strongly against transfer. *See Link_A_Media*, 662 F.3d at 1224 (noting that "a district court's concurrent litigation involving the same patent [is] a relevant consideration" for § 1404(a) purposes).

### IX. RELATIVE ADMINISTRATIVE DIFFICULTY DUE TO COURT CONGESTION

The parties contend that this factor is neutral.

### X. LOCAL INTEREST IN DECIDING LOCAL CONTROVERSIES AT HOME

The local controversy factor is neutral. First, "[p]atent issues do not give rise to a local controversy or implicate local interests." *TriStata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008). Second, Fortinet's dispute with Realtime, which does not reside in California, is not a "local controversy" in the Northern District.

### XI. PUBLIC POLICIES OF THE FORA

Delaware's public policy encourages Delaware corporations to resolve their disputes in Delaware courts. *Round Rock Research, LLC v. Dell, Inc.*, 904 F. Supp. 2d 374, 378 (D. Del. 2012). That concern is irrelevant since Realtime is not a Delaware corporation, and the defendant, which is a Delaware corporation, does not want to litigate here. *E.g., Semcon Tech, LLC v. Intel Corp.*, 2013 WL 126421, at *4 (D. Del. Jan. 8, 2013). This factor is thus neutral.

## XII. FAMILIARITY OF THE TRIAL JUDGES WITH THE APPLICABLE STATE LAW IN DIVERSITY CASES

Realtime's claims arise under the federal patent laws. Therefore, the familiarity of the respective districts with state law is not applicable and this factor is neutral.

* * * *

In sum, of the 12 *Jumara* factors, seven are neutral, two weigh strongly against transfer, one favors transfer, and two slightly favor transfer. Having considered the factors in their totality and treated Realtime's choice of this forum as a paramount consideration, I find that Fortinet has failed to demonstrate that the *Jumara* factors weigh strongly in favor of transfer. I will therefore deny Fortinet's motion to transfer (D.I. 14).[3]

The Court will enter an order consistent with this Memorandum Opinion.

---

[3] I note that I would have reached the same conclusion had I given "significant" but less than "a paramount consideration" to Realtime's forum choice in my balancing of the *Jumara* factors. *See Link_A_Media*, 662 F.3d at 1223 (noting that "[t]o be sure, the Third Circuit places significance on a plaintiff's choice of forum").